BUSH ET AL. v. THE CITY OF DUBUQUE ET AL.

1. **Certiorari:** INJUNCTION: DELAY IN ISSUING WRITS: NO FAULT OF PLAINTIFFS. Where a petition for *certiorari* and injunction was filed with due diligence, but the writs thereon were delayed on account of the disqualification of the judge to take cognizance of the case, *held* that plaintiffs lost no right by the delay.

2. **Cities and Towns:** FILLING WET LOTS: LIMIT OF AUTHORITY: ASSESSMENT OF COST UPON OWNERS: RIGHT TO NOTICE AND HEARING. The owners of city lots have the right to maintain their surface at any grade they may desire, so long as they create or maintain no nuisance by doing so; and where a lot is so low as to become a nuisance by reason of its retaining stagnant water, the city has no authority to cause it to be raised any higher than necessary for the abatement of the nuisance; nor has a city any authority to cause such lots to be filled at the expense of the owners, without first giving them due notice and an opportunity to be heard. *Gatch v. The City of Des Moines*, 63 Iowa, 718, and other cited cases, followed in principle.

3. **Injunction:** PARTIES DEFENDANT: COSTS. Where the doing of certain work under the direction of a city council is enjoined, the person employed to do the work is a proper party defendant, but where he makes no defense no costs should be taxed against him.

*Appeal from Dubuque Circuit Court.*

SATURDAY, JUNE 19.

THE plaintiffs are the owners of some ten or eleven lots fronting on Main street, in the city of Dubuque. The surface of these lots is much below the level of Main street, and the city council, by a resolution, ordered that the lots be filled by plaintiffs to a level with Main street, and that, on the failure of plaintiffs to fill the lots within a prescribed time, the work should be done by the city, and the expense thereof charged to the plaintiffs, and made a lien upon the lots. The plaintiffs did not comply with the resolution, whereupon the work was let by the city council to a contractor who was proceeding to execute the mandate of the council when this action in *certiorari* was commenced and

the prosecution of the work was enjoined.   Upon a trial in the circuit court a judgment was entered, setting aside and annulling the said resolutions and orders of the city council. Defendants appeal.

*Powers & Lacy* and *D. J. Linehan*, for appellants.

*Utt Bros.* and *J. G. Brown*, for appellees.

ROTHROCK, J.—I.   The city of Dubuque is acting under a special charter.   By chapter 90 of the Acts of the Nine-

1. CERTIO-
RARI: in-
junction: de-
lay in issuing
writs: no
fault of
plaintiffs.

teenth General Assembly it was enacted (section 1) that all cities acting under a special charter shall have power to cause any lot or piece of land within their limits, on which water, at any time, becomes stagnant, to be filled up or drained in such a manner as may be directed by a resolution of the city council; and the owner, or his agent, of such lot or piece of land shall, after service of a copy of such resolution, or after a publication in some newspaper of general circulation in such city for two consecutive weeks, comply with the directions of such resolution within the time therein specified; and, in case of a failure or a refusal so to do, it may be done at the expense of such city, and the amount of money so expended shall be a debt due from the owner of such lot or piece of land to said city, and shall also be a lien on said lot or piece of land from the time of the adoption of said resolution. Section 2:   "Any such city may, in addition to the means provided by section 1 of this act, if by ordinance it so elects, cause the expense of such filling to be levied as a special tax on such lot or piece of land, and may collect the same by tax sale in such manner as may be provided by such ordinance."   The resolution of the council recited that the lots of the plaintiffs were "covered by stagnant water at all seasons of the year."

It appears that a resolution ordering the lots to be filled and raised to a level with Main street was first passed by the

city council on the fifth day of February, 1883. Notice of this resolution was served upon the plaintiffs, but it seems that further proceedings in the matter were abandoned for the time being. On the third day of December, 1883, the council passed an ordinance upon the subject of filling up and raising the surface of lots covered with stagnant water. This ordinance provides the proceedings necessary to be taken by the city council, the manner of service of the resolution upon the lot-owner, ordering the work to be done, and it makes the cost of the work a lien upon the lots, and provides for the sale of the lots to pay the cost of the improvements, and that, if the same shall not sell for sufficient to pay the assessment for the improvement, the balance shall be a debt due from the owner of the lot to the city, which debt shall bear interest at the rate of ten per cent per annum. After the passage of this ordinance, and on the sixth day of December, 1883, the city council passed a resolution similar to that passed in the month of February preceding. This resolution ordered the plaintiffs to fill and raise the lots to a level with Main street on or before February 1, 1884. The plaintiffs were afterwards served with notice that the resolution had been passed by the council. They did not comply therewith, and on the tenth day of March, 1884, the council ordered the city recorder to advertise for proposals to do the work, and on the eighteenth day of March, 1884, the council awarded the contract to the defendant Randall, who was proceeding to fill the lots when this action was commenced. The petition in this case was filed on the thirty-first day of March, 1884, and on the same day notice was served upon the defendants of the time and place where plaintiffs would apply for an order for the issuance of the writ. The writ was not ordered and issued for several weeks afterwards, but the delay was not caused by plaintiffs, but by reason of the disqualification of the circuit judge of the Dubuque circuit to take cognizance of the case. It will thus be seen that the plaintiffs lost no right they may have in the premises by any *laches* or delay

in commencing the action, and this is all we desire to say upon that question in the case.

II. The plaintiffs allege in their petition that they had no notice that the council had in contemplation the passage of the resolution of December 6, 1883, and that they were first advised of the resolution by the demand that they should fill their lots as required thereby. They further aver that the resolution required the lots to be raised to a height not necessary nor required to prevent stagnant water remaining thereon; "that to remove any water that is liable to remain standing on said lots would not require said lots to be raised to a greater height than four feet; that to comply with the order of the council, and raise the same to the height of the adjoining street, is wholly unnecessary to accomplish the object in view, and for which the power is given by the charter, and to comply with the order or resolution of the council would entail upon the plaintiff, John D. Bush, an expense of at least $5,000, and upon D. N. Cooley $4,000, over and above what would be necessary to accomplish the object in view for which the power was given, and would in fact cost more than the value of said lots when filled, and so amount to a confiscation thereof." And they aver that the whole expense of filling said lots as required by the resolution, and under the contract with Randall, would amount in the aggregate to a very large sum. In answer to this, the city council say that they have no knowledge or information sufficient to form a belief as to the cost of the work. The circuit court held that the city council acted illegally in passing the ordinance without giving the plaintiffs notice of the pendency thereof, and an opportunity to be heard upon the merits. The court's decision was based upon the cases of *Gatch v. City of Des Moines*, 63 Iowa, 718; *Trustees of Griswold College v. City of Davenport*, 65 Id., 633; *Auer v. City of Dubuque*, Id., 650. It was held in those cases that special assessments of taxes, made without notice to the

*[margin note: 2. CITIES and towns: filling wet lots: limit of authority: assessment of cost upon owners: right to notice and hearing.]*

owner of property and an opportunity to be heard, were invalid. The court below, in a very clear and forcible opinion, held that the principle in this case is the same, and that, as the ordinance under which the resolution was passed makes no provision for notice to the owner of the improvement contemplated, or rather of the abatement of what the council regarded as a nuisance, and no notice of the proceedings was in fact served upon the plaintiffs, so far as to give them an opportunity to show that no such burdensome and extraordinary expenditure of money was necessary to be imposed upon the plaintiffs to abate the nuisance, the proceedings were therefore void.

We think the conclusion reached by the circuit court was correct, and that there is enough in the record before us to sustain the judgment, without determining that the plaintiffs were absolutely entitled to notice of the pendency of the resolution. It is not denied by the return or answer of the city council that the expenditure proposed was quite large; and it does not appear that there was any great emergency requiring these lots to be speedily filled in midwinter; and, to say the least, a consultation with the owners of the lots upon the extent of work necessary to be done would have been a wise precaution which would have tended to avoid unnecessary litigation. Instead of doing this, the council saw fit to fix an arbitrary level to which the lots should be raised, and their records and proceedings do not show that this was necessary to rid the lots of stagnant water. They had no right to order the lots to be raised above the level necessary for this purpose. It may be it was thought that the appearance of the city would be improved by filling the lots to a level with Main street; but, whatever the object was, anything beyond an abatement of the nuisance was unauthorized and void. The owner of lots has the right to maintain their surface at any grade that he may desire, so long as he creates or maintains no nuisance by so doing. If it be true, as averred in the petition, that there is no necessity for

filling these lots to a level with Main street, (and the aver-ment is not denied,) the city council exceeded its authority, and undertook to impose upon the plaintiffs an unlawful and illegal burden; and, if the sale of the lots shall prove insufficient to pay the charges, it is proposed to collect the balance from the owners, with interest at ten per cent per annum. If this should be the result, an investment in water lots would be more disastrous than the loss of the money invested. It would be a calamity.

It is no answer to our position to say that the plaintiffs will have notice and an opportunity to be heard before the tax is assessed upon the lots. The city council has no right to involve the city in an unauthorized and illegal contract to fill these lots to a greater height than necessary, and expend more money than they have any right to collect of abutting owners; and, in view of the fact that the authorities of many of our cities and towns seem to be of opinion that there is no limit to municipal power, it is well for courts to keep them within the well-known rule, that they have no power except such as is expressly conferred by statute, or necessarily implied therefrom.

III. It is contended by counsel for the defendant Randall that the cause should have been dismissed as to him, because he was not a proper party defendant, and was improperly joined with the other defendants. We think, inasmuch as the plaintiffs sought by injunction to enjoin the filling of the lots, that Randall was a proper party defendant for that purpose. But, as he made no resistance to the injunction, and no issue with the plaintiffs, no costs should be taxed against him in this court, or in the court below.

3. INJUNC-
TION: parties
defendant:
costs.

AFFIRMED.